ERNEST D. RIZZO, Plaintiff-Appellee, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF FRANKLIN PARK, COOK COUNTY, *et al.*, Defendants-Appellants.

(No. 60947;

First District (5th Division)—October 24, 1975.

Richard E. Dowdle and Henry J. Hyde, both of Chicago, for appellants.

Walter C. Wellman, of Lyons, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant (Board) appeals from an order of the circuit court of Cook County setting aside its decision which removed plaintiff from his job as a Franklin Park policeman. It contends that its decision was not

against the manifest weight of the evidence and should therefore have been upheld.

Plaintiff was found guilty of misconduct for violating Rule 2 of the department's Rules and Regulations by possessing and using an automobile which he knew or should have known had been stolen.[1] The Board ordered his dismissal from the department. In an administrative review proceeding in the circuit court, the order was confirmed on November 25, 1968, and this court affirmed that finding in *Rizzo v. Board of Fire & Police Commissioners*, 131 Ill.App.2d 229, 267 N.E.2d 7.

Thereafter, on June 8, 1971, plaintiff filed a petition for supplementary proceedings based upon alleged perjurious testimony and other evidence not made known to the Board at the original hearing. The trial court entered an order vacating the 1968 judgment and ordering a hearing *de novo* by the Board which order was affirmed by this court. *Rizzo v. Board of Fire and Police Commissioners*, 11 Ill.App.3d 460, 297 N.E.2d 247.

The facts of the instant case were adequately summarized in our prior opinions. Having again examined the record, we believe our prior summary of the facts will amply serve our present needs, and, therefore, refer the reader to that summary of the evidence. 131 Ill.App.2d 229, 267 N.E.2d 7; 11 Ill.App.3d 460, 297 N.E.2d 247.

At the new hearing, the following additional evidence pertinent to this appeal was adduced.

William Zahn, the Acting Police Chief of Franklin Park from January through March, 1968, and the original complainant in this case, retired. He asked to withdraw the charges before the Board. He replied to plaintiff's circuit court complaint by filing a motion to dismiss the charges against plaintiff.

Plaintiff petitioned the Board to have its chairman, Bernard Hamilton, disqualify himself and moved to dismiss the proceedings. He alleged that Hamilton was prejudiced against him by virtue of a statement Hamilton had made to Officer Dennis Blum and that he was disqualified from being a Board member under Illinois law.[2] Sergeant James Miller testified that Hamilton said plaintiff would not come back to the department as long as he was a Board member. Miller did not know the approximate date of the conversation, nor who was present, except that

[1] Rule 2 of Chapter 1, Conduct. No member of the Department shall conduct himself in a manner unbecoming a member or employee of the Police Department.

[2] Section 10—2.1—3 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—3) provides that "[n]o person holding a lucrative office under the United States, this state or any political subdivision thereof, or a municipality, shall be a member of the Board of fire and police commissioners or the Secretary thereof."

Blum was not present. Blum denied ever hearing the remark in question. Plaintiff testified on his own behalf that Hamilton was in the lettering business and did business for the Village although he did not state the amount of business. The record indicates that Hamilton denied having ever made the remark in question and that his total business with the Village was billed at $1213.95 for the preceding three-year period. The Board denied plaintiff's motion.

*John La Gioia for the Village*

He is a police officer in the Franklin Park police department. His present testimony substantially corroborated his testimony from the original hearing including his conversations with plaintiff and the subsequent meeting with the man claiming to be John Campell. In addition, he testified that in late February or early March, 1968, he received a second statement, unsigned, but purportedly from Campell, and the 806 serial number plate in an envelope at the station. In this later statement Campell claimed to have purchased the 850 vehicle himself and to have stolen the 806 vehicle from Avis. The statement, if believed, would have cleared plaintiff from any knowledge or complicity in the crime. On February 29, 1968, he and Zahn traced the charred 850 vehicle to the ABC Welding Company in River Grove. The vehicle was now owned by Jerry Wilson. The serial number plate was missing. On cross-examination, he testified that plaintiff never specifically identified himself on the phone.

*Harry Bade*

He is the owner of the building in Des Plaines where John Campell allegedly lived in 1968. He had no knowledge of any tenant named John Campell.

*Joseph Miller*

He was the supervisor of security for Avis Rent-A-Car in late 1966. He recognized the Avis vehicle sale and transfer form. The charred 850 vehicle was sold to Ernest Rizzo on or about December 12, 1966. He reported the 806 vehicle stolen to the Chicago Police Department on October 26, 1967.

*Robert Camp*

He invoked the Fifth Amendment privilege and refused to testify. Over plaintiff's objection, the Board allowed his prior sworn testimony at the 1968 hearing to be read into the record. He was the used car salesman for Avis Rent-A-Car in December, 1966. He sold the charred 850 vehicle to plaintiff for $375.

*Duane Reitz*

He testified that he would "stand by" his previous testimony and

invoke the Fifth Amendment privilege "for the rest of the way." Over plaintiff's objection, the Board also allowed his prior sworn testimony at the 1968 hearing to be read into the record. He was the Zone Fleet Manager for Avis Rent-A-Car and was responsible for buying and selling the fleet. Avis sold the 850 vehicle to plaintiff on December 12, 1966, for $375. A John Campell told him that he would possibly be implicated in a case and offered to purchase the title to the 806 vehicle. The 806 vehicle was then sold to Campell in January, 1968.

*Ernest Rizzo*

He was called by the Village and also testified on his own behalf. He denied ever purchasing the 850 vehicle from Avis Rent-A-Car. When confronted with his own prior inconsistent statement evidencing the purchase, he testified that he could not remember making the statement. He purchased the 806 vehicle from John Campell and traded it in at Tom Edwards Chevrolet in 1968.

Following the new hearing the Board, on January 22, 1974, found plaintiff guilty of misconduct in violation of Rule 2 and again removed him from the department. Plaintiff once again sought judicial review in the circuit court of Cook County under the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) The trial court entered an order setting aside the Findings and Decision of the Board as being against the manifest weight of the evidence and this appeal followed.

OPINION

■■ The Board contends that the trial court's judgment setting aside its findings and decision which discharged plaintiff is against the manifest weight of the evidence. Section 11 of the Administrative Review Act provides that the factual findings and conclusions of the administrative agency shall be held to be prima facie true and correct. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Where there is substantial evidence on the record to support a police board's decision, the trial court should not substitute its own judgment. *Schwarze v. Board of Fire & Police Commissioners*, 46 Ill.App.2d 64, 196 N.E.2d 724.

There is ample evidence in this record upon which the Board could find cause for plaintiff's dismissal. Plaintiff's version of the purchase of the 806 vehicle is questionable at best. Plaintiff would have us believe that he paid over $2000 to a man he did not know for a title certificate that incorrectly described the covered automobile by 11 years and incorrectly stated the serial number. Moreover, the certificate showed that his unknown seller acquired title to the vehicle 14 days after he had possession of it and offered it for sale.

At the hearing *de novo* plaintiff attempted to disassociate himself from

the purchase of the charred 850 vehicle. Nonetheless, the documentary evidence clearly substantiates his original version of the purchase. Avis's vehicle sales and transfer form and its typewritten sales memorandum both evidence the sale to plaintiff. Moreover, the prior testimony of two Avis employees, Reitz and Camp, both corroborate the sale to plaintiff. ■■ Plaintiff's argument and the trial court's finding that it was error to admit this prior recorded testimony are incorrect. The hearsay rule does not apply to prior recorded testimony when the witness is unavailable to testify at a later proceeding. A witness need not be dead or out of State in order for the unavailability requirement to be satisfied. The requirement has been expanded to include a witness who, by the exercise of a privilege, refused to testify. (*Naylor v. Gronkowski,* 9 Ill.App.3d 302, 292 N.E.2d 227.) Therefore, the Board could admit the 1968 testimony of Reitz and Camp against plaintiff when they invoked the privilege against self-incrimination at the hearing *do novo.*

Finally, if plaintiff's involvement in the purchase of the 850 vehicle as evidenced by his own prior testimony, the corroborating documentary evidence, and the corroborating testimony of Reitz and Camp is credible, then the title certificate to the 806 vehicle is all the more incredible. Although it showed the 850 vehicle number, plaintiff would have us believe that he did not recognize the identical number that he purchased from Avis and transferred to Campell just a few days before.

Plaintiff argues that the evidence does not establish that he arranged the meeting between La Gioia and Campell, thus supporting his defense that he had no knowledge that the 806 vehicle was stolen. The Board could consider, however, that La Gioia's testimony at both the 1968 hearing and the 1973 hearing *de novo* showed numerous telephone calls and a personal meeting with plaintiff regarding the meeting. Regardless of who actually arranged the meeting, the fact that Campell's first written statement was on official police stationery and that Campell appeared at Avis to purchase the 806 vehicle within three days after charges were filed against plaintiff can support the Board's finding. Indeed, the actual existence of John Campell is questionable since that person carried no verifying identification when he arrived at the meeting with La Gioia, could not correctly spell his own name, and was never seen nor heard of by the man plaintiff claimed to be his landlord.

Plaintiff's argument that he did not receive a fair and impartial hearing because Hamilton, who was prejudiced against him, chaired the hearing *de novo* is unfounded. Plaintiff's verified petition alleging Hamilton's bias could not even be supported by the officer who supposedly heard the derogatory remark. This court's statement on a previous appeal that the matter would probably be heard by a new panel, when read in

its total context, is not a mandate that barred Hamilton from sitting, but only recognized the need for a complete hearing *de novo* to acquaint any new Board members with the facts of the entire transaction. Finally, we do not equate doing business with the Village with holding an office in the Village, such that Hamilton would be barred by section 10—2.1—3 of the Illinois Municipal Code. Ill. Rev. Stat. 1973, ch. 24, par. 10—2.1—3.

■■ Plaintiff argues that the order entered July 1, 1974, denying the Board's motion to vacate the trial court's order of May 20, 1974, which reversed the Board is not a final and appealable order. On order is final and appealable when it terminates the litigation on the merits of the case and determines the rights of the parties either upon the entire controversy or upon some definite and separate part of it. (*In re Annexation of Certain Territory to the City of Darien*, 16 Ill.App.3d 140, 304 N.E.2d 769.) Here, plaintiff filed a separate mandamus action to compel back pay which was consolidated with this original Administrative Review action on February 25, 1974. The consolidation order specifically provided for "hearing at consecutive hearings, the Administrative Review case to be ruled on first." An order for back pay has no practical effect until a final decision is reached on the legality of the discharge. Therefore, since the order clearly terminates all arguments on the merits and determines the rights on a definite part of the case, we hold the order of July 1, 1974, to be final and appealable.

Finally, plaintiff argues that the Board lost jurisdiction when William Zahn, the original complainant, asked the Board to drop the charges against plaintiff. The fact that Zahn is now retired or does not wish to personally pursue the matter does not deprive the Board of jurisdiction once a complaint has been filed. Zahn filed the charges as the Acting Village Police Chief. At no time has the Village failed to actively pursue this matter. Therefore, we find that this matter was properly before the Board for its consideration.

■■ In light of the substantial evidence on the record upon which the Board could have based its decision we reverse the decision of the circuit court and affirm the decision of the Board.

The judgment of the circuit court is reversed and the cause is remanded with directions to confirm the decision of the Board.

Reversed and remanded with directions.

BARRETT, P. J., and SULLIVAN, J., concur.